UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JACOB HAGEMANN,

        Plaintiff,

v.                                                                       Case No. 10-C-026

MICHAEL SCHMITZ, et al.,

        Defendants.

**MEMORANDUM AND ORDER**

Plaintiff Jacob Hagemann filed a civil rights complaint pursuant to 42 U.S.C. § 1983 while he was incarcerated at Dodge Correctional Institution. His claim, however, relates to the conditions of his confinement in the Walworth County Jail. According to Hagemann, defendants violated his rights while he was confined in the Walworth County Jail in the summer of 2008 and was made to go without bedding for 17 hours a day in a cold cell (Hagemann alleges that the air conditioning was on continuously). Hagemann complains he was forced to lay on the concrete floor of his cell without bedding, which was "ice cold." Defendants moved for summary judgment on November 11, 2010. (Dkt. 39.) Over fifty days have passed since Defendants filed their motion but Hagemann has not responded. For the reasons set forth herein the motion will be granted.

**BACKGROUND**

Hagemann was booked into the Walworth County Jail ("Jail") on June 19, 2008, and released from this period of detention on November 11, 2008. Hagemann alleges that on July 1, 2008, he was placed in "the hole" in cell 714 in the Walworth County Jail and denied bedding for

17 hours a day. (Complaint at 3.) Hagemann alleges he was deprived of heat and subjected to "super blowing freezing cold air conditioning night and day 24/7" with nothing done to rectify the situation. (Complaint at 3.) Hagemann alleges he was forced to "lay on ice cold concrete." (Complaint at 4.) Hagemann alleges he "complained verbally every day," "wrote maintenance every day," and wrote to defendants Bjorge, Delaney and Schmitz "daily." (Complaint at 4.)

Hagemann has named three defendants in this suit. Defendant Michael Schmitz is employed as the Jail Administrator within the Walworth County Sheriff's Department. Defendant John Delaney is employed as the Assistant Jail Administrator within the Walworth County Sheriff's Department. Defendant David Bjorge is employed as a Correctional Sergeant within the Walworth County Sheriff's Department.

Cell 714 is located in the disciplinary segregation area of the Walworth County Jail. (Plaintiff's Findings of Fact "PFOF" ¶ 12; Schmitz Aff. ¶ 11.) Hagemann was housed in cell 714 from July 1 to July 31, and again from August 1 to August 5, 2008. (PFOF ¶ 13; Schmitz Aff. ¶ 12, Ex. A; see also Complaint at 3-4.) At the time of his June 19, 2008, booking, Hagemann was issued clothing consisting of a uniform shirt, uniform pants, underwear, t-shirt, socks and sandals. (PFOF ¶ 14; Schmitz Aff. ¶ 13, Ex. B.) Hagemann was also issued a blanket, sheets, pillow case and a towel. (PFOF ¶ 16; Schmitz Aff. ¶ 14, Ex. B.) At the times at issue in this action, while housed in disciplinary segregation, an inmate's bedding and mattress was removed from the cell after morning wake-up and returned just before lights-out; thus disciplinary segregation inmates have their bedding for eight hours per night. (PFOF ¶ 17; Schmitz Aff. ¶ 15.)

The Law Enforcement Center, the building in which the Walworth County Jail is located, was built in 1995. Heating, ventilation and air conditioning, or "HVAC" units were replaced in

2007. Temperatures are controlled by a building-wide Johnson Controls computerized system. The "set point" for temperatures in the Jail is 71 to 75 degrees. (PFOF ¶ 26; Spotz Aff. ¶ 11.) With that set point, one might expect to find a one degree variation up or down from the set point temperature. (PFOF ¶ 27; Spotz Aff. ¶ 12.) Thus, one would expect jail cell temperatures to be between approximately 70 and 76 degrees. (PFOF ¶ 28; Spotz Aff. ¶ 13.)

Only Walworth County Department of Public Works employees control the temperature set point. (PFOF ¶ 29; Spotz Aff. ¶ 14.) Defendants Schmitz, Delaney and Bjorge do not set or control the temperature in disciplinary segregation generally or in cell 714 specifically. (PFOF ¶ 30; Schmitz Aff. ¶ 17; Delaney Aff. ¶ 6; Bjorge Aff. ¶ 5.) Schmitz, Delaney and Bjorge are not aware of widespread complaints by inmates or staff of cold disciplinary segregation cell temperatures in the summer months. (PFOF ¶ 31; Schmitz Aff. ¶ 18; Delaney Aff. ¶ 7; Bjorge Aff. ¶ 6.)

The particular rooftop HVAC unit which serves disciplinary segregation cell 714 also serves other disciplinary segregation cells and additional areas of the Jail. (PFOF ¶ 32; Spotz Aff. ¶ 15.) If there was a problem with an HVAC unit that would cause unusually cold (or for that matter, hot) temperatures, it would affect other inmate cells and staff working areas as well. (PFOF ¶ 33; Spotz Aff. ¶ 16.) DPW is not aware of problems with the 2007 HVAC rooftop unit serving the disciplinary segregation area, or cell 714. (PFOF ¶ 34; Spotz Aff. ¶ 17.) DPW has not received widespread complaints about cold summertime temperatures by inmates or staff in the disciplinary segregation area. (PFOF ¶ 35; Spotz Aff. ¶ 18.) Building Maintenance Engineer Jeff Spotz cannot recall a single cold cell complaint from a disciplinary segregation inmate in the summer of 2010. (PFOF ¶ 36; Spotz Aff. ¶ 19.) Sgt. Bjorge routinely wears his uniform with short sleeves, rather than long sleeves, because he does not feel cold at work. (PFOF ¶ 37; Bjorge Aff. ¶ 7.)

3

Cell 714 contains one vent through which heated or cooled air is delivered. (PFOF ¶ 38; Spotz Aff. ¶ 20.) Cell 714 also contains an exhaust vent through which air is vented to the outside of the facility, rather than recycled, as required by code. (PFOF ¶ 39; Spotz Aff. ¶ 21.)

Between July 2, 2008 and August 17, 2008, Hagemann submitted several inmate complaints, requests and appeals related to cold conditions in his cell. Schmitz responded to his complaints in writing and asked maintenance to monitor the cell temperature. Jeff Spotz was asked to use a laser thermometer to measure Fahrenheit temperatures in cell 714 in response to Hagemann's concerns. (PFOF ¶ 41; Spotz Aff. ¶¶ 23, 25.) The laser thermometer can measure the ambient temperature as well as the surface temperature of objects. (PFOF ¶ 42; Spotz Aff. ¶ 24.) On or about July 21, 2008, the floor temperature in cell 714 was 72.6 degrees. (PFOF ¶ 43; Spotz Aff. ¶ 26.) The temperature of the walls in cell 714 was 74.2 degrees. (PFOF ¶ 44; Spotz Aff. ¶ 27.) The metal vent from which cooled air was discharged was 69.7 degrees. (PFOF ¶ 45; Spotz Aff. ¶ 28.) The bunk temperature in cell 714 was 71.8 degrees. (PFOF ¶ 46; Spotz Aff. ¶ 29.) Sgt. Bjorge separately measured the temperature in cell 714 using another thermometer and recorded the ambient temperature at 73 degrees. (PFOF ¶ 47; Bjorge Aff. ¶ 16.) Neither Spotz nor Bjorge personally observed cell 714 to be excessively or uncomfortably cold. (PFOF ¶ 48; Spotz Aff. ¶ 30; Bjorge Aff. ¶ 8.) Nonetheless, in response to Hagemann's concerns, Spotz increased the set point by one degree. (PFOF ¶ 49; Spotz Aff. ¶ 31.) Had Spotz personally observed or documented problematic temperatures in cell 714 or the disciplinary segregation area he would have addressed and resolved the issue. (PFOF ¶ 50; Spotz Aff. ¶ 32.)

**DISCUSSION**

**I. Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II. Analysis**

    **A. Cold Cell**

Conditions of confinement that combine to deprive inmates of warmth may violate the Eighth Amendment. *Wilson v. Seiter,* 501 U.S. 294, 305 (1991). Under the Eighth Amendment, prisons must provide "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Gillis v. Litscher,* 468 F.3d 488, 493 (7th Cir. 2006)(quotation marks and citation omitted). Exposure to "extreme cold" alone may be sufficient to support an Eight Amendment conditions of confinement claim. *Dixon v. Godinez,* 114 F.3d 640, 642-43 (7th Cir. 1993). "[T]he minimal standards required by the Eighth Amendment include the right of a prisoner 'not to be confined in a cell at so low a temperature as to cause severe discomfort.'" *Dixon,* 114 F.3d at 644. To succeed on an Eighth Amendment claim, the plaintiff must establish that "prison officials were deliberately indifferent to his needs." *Dixon,* 114 F.3d at 644 (citing *Wilson*, 501 U.S. at 301-04).

Here Hagemann has not established that he was exposed to excessively cold cell temperatures. Contrary to his allegation of a freezing or ice cold bunk, the measured bunk temperature while he was in the cell was 71.8 degrees. The measured temperatures showed the floor at 72.6 degrees, the walls at 74.2 degrees, the metal vent cover at 69.7 degrees, and the ambient air temperature at 73 degrees. Neither Spotz nor Bjorge personally observed cell 714 to be excessively or uncomfortably cold. No widespread complaints by other inmates or staff whose cell and work area temperatures would have been controlled and affected by the same HVAC system and unit as cell 714 were received. Nonetheless, in response to Hagemann's concerns, Spotz increased the set point by one degree. Subsequent summaries of temperatures reflect a range of 71

6

to 74 degrees. Finally, it bears repeating that Hagemann's complaint of an unconstitutionally cold cell stem from his confinement in said cell in July and August – the two warmest months of the year.

The established temperatures in Cell 714 at the relevant time do not invoke the kinds of circumstances at issue in other deprivation of warmth cases in this Circuit. The Southern District of Illinois collected these cases as follows:

> *Dixon v. Godinez,* 114 F.3d 640, 643 (7th Cir. 1997)(temperatures in cell averaging 40 degrees Fahrenheit and regularly falling below freezing for four consecutive winters); *Murphy v. Walker,* 51 F.3d 714, 720-21 (7th Cir. 1995)(unheated cell and no blankets or clothing for a 1 and 1/2 weeks); *Del Raine v. Williford,* 32 F.3d 1024, 1036 (prisoner housed in cell with broken windows in which temperature was near outdoor temperature including a period of two days where wind chills were from -40 to -50 degrees Fahrenheit); *Henderson v. DeRobertis,* 940 F.2d 1055, 1056-61 (7th Cir. 1991)(finding an Eighth Amendment violation clearly established where conditions included broken cell windows, below freezing temperatures inside the cell, no winter clothing, lack of extra blankets, and a malfunctioning heating system over period of four days in which temperature fell to -22 degrees Fahrenheit and a windchill of -80 degrees Fahrenheit outside).

*Dace v. Smith-Vasquez,* 658 F. Supp. 2d 865, 876 (S.D. Ill. 2009). Because Hagemann's cell temperature claim and his attendant allegations about bedding diverge so clearly from the above-described circumstances, his claims will be dismissed. *See Dixon v. Godinez,* 114 F.3d 640 (emphasizing that bedding is relevant to question of whether inmate was adequately protected against cold). There is no dispute that Hagemann was provided bedding during the evening sleeping hours. (Complaint at 3.) In sum, Hagemann's cell was not unconstitutionally cold, and, even if the cell was slightly cool, he was provided adequate bedding and clothing during evening sleeping hours to keep warm.

### B. Deliberate Indifference

In addition to his inability to establish unconstitutional cell temperatures, Hagemann cannot establish deliberate indifference by Michael Schmitz, John Delaney or David Bjorge. "Deliberate indifference" means that the prison officials "each knew that [the prisoner] faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008). "Deliberate indifference" means something more than mere negligence, but something less than intentional conduct. *Del Raine,* 32 F.3d at 1031-32. A prison official that does not know about the harm or cannot do anything about it, is not "deliberately indifferent" for failing to act. *Del Raine,* 32 F.3d at 1038.

Hagemann cannot show that there were problems with the HVAC system at the Jail. He has not established any injury or illness resulting from the alleged conditions of confinement. Hagemann cannot establish freezing outdoor temperatures – he was in cell 714 during the warmest months of the year. Nor can Hagemann introduce any evidence contradicting the measured and recorded temperatures in cell 714 during the time he was housed there. In sum he cannot establish a substantial risk of harm which is predicate to a finding of deliberate indifference. *Dace v. Smith-Vasquez,* 658 F. Supp. 2d 865, 876 (S.D. Ill. 2009).

Moreover, Delaney and Schmitz responded to Hagemann's Inmate complaints and appeals. At the direction of the defendants, DPW and Jail staff measured and monitored Hagemann's cell temperatures. (Motion for Summary Judgment at 6-11.) Despite finding temperatures between 69.7 and 74.2 degrees Fahrenheit, Jeff Spotz increased the set point temperature by one degree in response to Hagemann's concerns. Subsequent summaries of temperatures showed a range between 71 and 74 degrees. By responding to Hagemann's complaints the defendants showed the opposite

8

of deliberate indifference; they showed that they took his complaints seriously, investigated, and took appropriate action. Because Hagemann cannot establish deliberate indifference by the defendants his claims will be dismissed.

**C. Qualified Immunity**

Qualified immunity provides a separate and additional basis for granting summary judgment. Government officials performing discretionary functions are shielded from liability in their individual capacity insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1992); *Hinnen v. Kelly,* 992 F.2d 140, 142 (7th Cir. 1993). Where immunity is raised at the summary judgment stage, district courts conduct a two-part analysis: (1) does the substantiated conduct set out a constitutional violation; and (2) were the constitutional standards clearly established at the time in question. *Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151 (2001); see also *Jones v. Wilhelm,* 425 F.3d 455, 460-61 (7th Cir. 2005). Hagemann must establish both prongs in order to defeat the defense of qualified immunity. *Jones,* 425 F.3d at 461. For the reasons set forth above, Hagemann has not established that the movants violated his Eighth Amendment rights and therefore has not met the first prong of the *Saucier* analysis. Second, Hagemann cannot sustain a claim that the movants' conduct was made in violation of clearly established law. In determining whether the rights alleged to have been violated were "clearly established," the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation. *Warlick v. Cross,* 969 F.2d 303, 309 (7th Cir. 1992). The contours of the right must be sufficiently clear that a reasonable official would understand that what the official was doing violated that right. Anderson, 483 U.S. at 640; *Jones,* 425 F.3d at 461.

Officials are entitled to immunity unless their conduct has been authoritatively determined to be unconstitutional. *Rakovich,* 850 F.2d at 1210. Here Hagemann has not and cannot present authority suggesting that a summertime cell temperature in the low to mid 70-degrees range deprives an inmate of constitutionally adequate warmth in order to defeat qualified immunity.

## CONCLUSION

From the evidence on this record, no reasonable juror could conclude that plaintiff's cell was unconstitutionally cold or that defendants acted with deliberate indifference toward plaintiff. In addition, plaintiff has failed to show that the doctrine of qualified immunity does not bar his claims.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment [Dkt. # 39] is **GRANTED**, and plaintiff's claims are dismissed, with prejudice.

Dated this   4th   day of January, 2011.

                                            s/ William C. Griesbach
                                            William C. Griesbach
                                            United States District Judge